SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SARA T. SHAW, OSB #204443**
Assistant United States Attorney
Sara.Shaw2@usdoj.gov
310 West Sixth Street
Medford, OR 97501
Telephone: (541) 734 3962
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**MEDFORD DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **1:26-cr-00083-MC** |
| **v.** | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF CONTINUED PRETRIAL DETENTION** |
| **MICHAEL SCOTT BEUGLI,** | |
| **Defendant.** | |

Defendant Michael Scott Beugli was indicted for one count of Felon in Possession of a Firearm, and two counts of Possession of a Weapon Not Registered with the National Firearms Registration and Transfer Record (NFRTR). Most alarmingly, Defendant possessed silencers, and a destructive device he used to detonate in his ex-girlfriend's vehicle (hereinafter Adult Witness 1 or AW1), causing damage, threatening AW1, and risking the safety of the surrounding neighbors. Taken with Defendant's extensive criminal history, including Menacing, Fleeing or Attempting to Elude a Police Officer, Unlawful Delivery of Methamphetamine, and Felon in Possession of a Firearm, this escalating violent and threatening behavior targeting AW1 reflects,

at best, flagrant disregard for the safety of others. His choice to set off a destructive device in her truck speaks for itself. Defendant has demonstrated his profound danger to the community and should remain detained pending trial.

## I. BACKGROUND

On February 24, 2026, Medford Police Department (MPD) SWAT responded to a 911 call at a residence. AW1's mother called reporting that Defendant was throwing firearms out of his residence at AW1 and threatening to kill her.

MPD SWAT surrounded the residence upon arrival, but it was unclear if Defendant was still inside. AW1 stated that she and Defendant had been in a relationship on and off for over ten years but that she had ended the relationship a week prior and moved in with her mother to get away from Defendant. She said she came with her mother to the residence to retrieve her belongings, but that Defendant threw a baseball-sized rock and firearms at her. AW1 stated that Defendant had more firearms in the residence, despite being a convicted felon. She stated he made homemade silencers that were also inside. A number of the items found inside and outside the residence are depicted below.


26·3103
001


26·3103
002


26·3103
003


26·3103
005












A search warrant was executed on the residence, and law enforcement discovered that Defendant had fled. During later investigation, it was discovered that Defendant left through the back door and took an Uber to another residence.

A total of nine firearms were located on the premises, as depicted above. One handgun had an obliterated serial number. Some were loaded and modified with tactical additions. There were numerous unserialized silencers located inside of his residence. All firearms were confirmed to have travelled in interstate commerce.

It did not end there for AW1. For the next month, Defendant sent AW1 continuous threatening messages, as depicted below. At one point, Defendant told AW1 “if you wanna go ahead to put me in prison like you did the first time, feel free, dude I’ll probably kill you when I get out.” In another message he said, “You’re going to regret stealing all my shit.”







On March 25, 2026, two citizens reported that a vehicle was on fire in their neighbor's driveway in the early morning before dawn in a town in Jackson County. After securing the scene, law enforcement located a detonated destructive device on the driver's seat of AW1's truck, which was parked outside of where she was living with her mother. The driver's side window of the truck was blown out from the explosion in the direction of a neighbor's house and the explosion sent out scattered shards of glass.

Law enforcement reviewed video from a neighbor's security camera. It showed a male, dressed in light sweatpants and hoodie with the hood up, approach AW1's truck, unlock it, and place an object on the driver's seat, as depicted below at top. The male walked down an alley

way westbound, and within seconds the device detonated damaging the car, as depicted below at bottom[1].





[1] These images are cropped from video surveillance for reference in this memorandum to focus on the truck, individual near the truck, and explosion. The government has retained the videos which are available.



Law enforcement became aware that Defendant had a spare set of keys to AW1's truck. During the investigation that day, Mr. Beugli was located at the residence he had traveled to on February 24, 2026, which Law enforcement determine was within one mile of where AW1 resided. As Detectives attempted to arrest him, Defendant pretended to pull a gun out of his pocket and pointed his finger at law enforcement. In his room at the residence, numerous wires and electronic devices were located, including high-performance surveillance binoculars. In the garage, multiple initiators were located that appeared to be the same as that used for the destructive device that detonated in AW1's vehicle. Law enforcement also located fireworks and a large plastic bin with handwritten warnings on the lid and side that said "caution explosives," and "fragile explosives," as depicted below.













Defendant was arrested and charged in the Jackson County Circuit Court; those charges were subsequently dismissed because of this federal prosecution. AW1 obtained a stalking order against Defendant in the Jackson County Circuit Court, and he was ordered to have no contact with her. But the order did not deter him. While in custody on state charges, a released Jackson County Jail inmate delivered a letter to AW1 at her place of work on Defendant's behalf. The letter contained an apology for Defendant's actions, and words stating that he loved her. In the letter Defendant says "Not being able to hear your voice or see you is really getting to me but I

guess that's my own damn fault. Sorry again." The person who delivered the letter told AW1 that Defendant had written him a bill of sale for AW1's vehicle and was requesting her keys. She did not provide them.

## II. LEGAL STANDARD

The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aiken*, 898 F. 2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F. 2d 755, 757 (9th Cir. 1986). The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. Section 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. Winsor, 785 F. 2d at 756. *See also United States v. Bibbs*, 488 F. Supp. 2d. 925, 925-26 (N. D Cal 2007).

Four factors help guide release decisions: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the nature and seriousness of the danger posed to the community; and (4) defendant's history and characteristics. 18 U.S.C. § 3142(g). In this case, all four factors clearly point to detention.

## III. DISCUSSION

Defendant should be detained as a danger to the community and as a flight risk. The offenses involve Defendant's illegal possession of a concerning number of firearms. A convicted felon possessing one firearm may pose a threat to the community. But Defendant possessed nine firearms (many of them fashioned with tactical accessories), and multiple homemade silencers. The danger of Defendant possessing these is overshadowed by the danger of his actions. He fled law enforcement, threatened AW1's life, and ultimately placed and detonated a device in her vehicle in a residential driveway, feet away from sleeping community members. Even while in

custody, he has shown a willingness to flout a court order and contact AW1. Defendant is a risk to the community and to AW1.

The weight of the evidence favors detention. Explosive material, detonators, initiators, and destructive device material were located at his residence the day of the detonation of the device. This is in addition to the multiple firearms and silencers seized from his residence, text message threats, and surveillance evidence showing the individual placing the destructive device in AW1's vehicle.

While extensive criminal history is not always indicative of a person's ability to be successful on release, Defendant's criminal history bears noting. The elude speaks to his flight risk. The menacing speaks to his danger. His previous possession of firearms speaks to his willingness to abide by clear prohibitions and court orders. All of this taken with his escalating behavior weighs heavily against release. The risk of Defendant rearming himself —again—or acting on his threats is too high for the safety of the community and AW1.

For the reasons outlined above, defendant should remain detained.

Dated: August 26, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney



SARA T. SHAW
Assistant United States Attorney